# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HENRY HARRIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 12 C 10370 |
| CITY OF HARVEY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Henry Harris has sued the City of Harvey under the Americans with Disabilities Act (ADA) for discrimination and retaliation. 42 U.S.C. §§ 12112(a), 12203(a).[1] The City of Harvey has moved for summary judgment on Harris's claims. For the reasons stated below, the Court grants the City's motion.

## Background

Henry Harris is a police officer employed by the City of Harvey. On January 18, 2009, Harris injured his back and shoulder in a traffic accident. After the injury, he began working light duty assignments. Harris filed a charge with the Equal Employment Opportunity Commission (EEOC) on May 13, 2010, alleging that he was denied light duty as a reasonable accommodation and that this constituted disability discrimination and retaliation for testifying in a race discrimination case. The EEOC issued Harris a notice of his right to sue on May 28, 2010. Harris did not file suit. Harris filed a second

---

[1] Harris's complaint also included two claims under 42 U.S.C. § 1983. The Court dismissed those claims on May 23, 2013.

EEOC charge on December 10, 2010, alleging that his supervisors engaged in retaliatory and discriminatory conduct after he filed his first EEOC charge. The EEOC issued Harris a notice of right to sue on September 27, 2012. Harris filed the current lawsuit on December 27, 2012.

Harris contends that Acting Chief of Police Donald Eaves, Commanders of Internal Affairs Lemuel Askew and Marcus Patterson, and City Attorney Sandra Alvarado engaged in a pattern of retaliation and disability discrimination after he filed his first EEOC charge. Specifically, Harris alleges that his supervisors (1) ordered him to drive a police vehicle to a deposition against medical restrictions, (2) failed to file an injury report after he went to the hospital following the deposition, (3) required him to submit forms explaining previous absences, (4) refused to replace his expired body armor, (5) assigned him work in the records room in violation of his medical restrictions, (6) threatened him, (7) underreported his wages to workers' compensation, (8) refused to reimburse him for his parking costs incurred during the deposition, (9) required him to use the previous year's sick days during an extended absence, (10) refused to pay him for the previous year's unused vacation leave, and (11) ordered him to return to full duty work before he was cleared by his doctors.

## Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1114 (7th Cir. 2001). Summary

judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A.     Timeliness**

The City of Harvey contends that because Harris did not sue within ninety days of receiving a right to sue letter for his first EEOC complaint, he cannot bring a claim for discrimination. Before filing suit under the ADA, a plaintiff must timely file a charge with the EEOC and must receive notice of his right to sue. *See* 42 U.S.C. § 12117 (adopting Title VII procedures set forth in 42 U.S.C. § 2000e-5). A plaintiff has ninety days to file suit after receiving notice. *Id.* § 2000e-5(f)(1).

The City is correct that Harris cannot bring a discrimination action based on the matters alleged in his first EEOC complaint because Harris did not file suit within ninety days of receiving the first right to sue letter. Harris can, however, pursue claims that were "like or reasonably related" to the allegations contained his second EEOC charge for which he timely filed suit. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Harris's failure to check the box labeled "discrimination" in the second EEOC charge does not preclude him from pursuing a discrimination claim. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976). In his second EEOC charge, Harris alleged that "the City of Harvey's scheme to retaliate" was also "part of an ongoing custom and practice of the City of Harvey to discriminate against police officers with disabilities." Pl.'s Mem. in Opp. to Mot. for Summ. J., Ex. B at 3. Because Harris's second EEOC charge alleged incidents that were unrelated to the

3

allegations in his first charge, he can proceed on his discrimination claim based on those incidents. *See Martini v. A. Finkl & Sons Co.*, No. 96 C 0756, 1996 WL 667816, at *6–7 (N.D. Ill. Nov. 15, 1996) (allowing adjudication of plaintiff's retaliation claim and discrimination claim "to the extent that it is predicated on allegations not specifically alleged in the [time barred] First Charge").

**B.    Retaliation claim**

The ADA prohibits an employer from retaliating against an employee who filed a complaint under the ADA. 42 U.S.C. § 12203(a). A plaintiff can prove retaliation either directly or indirectly. *Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012). To prove retaliation under the direct method, Harris must show that (1) he engaged in protected activity, (2) he suffered a materially adverse employment action, and (3) there was a causal link between his protected activity and the adverse action. *Id.* To prove retaliation under the indirect method, Harris must show that (1) he engaged in protected activity, (2) he was meeting his employer's legitimate expectations, (3) he suffered a materially adverse employment action, and (4) he was treated less favorably than similarly situated employees who did not engage in protected activity. *Kersting*, 250 F.3d at 1117. For summary judgment purposes, of course, Harris need only show that a reasonable jury could find in his favor on each point.

**1.    Incidents that occurred before Harris's first EEOC charge**

First, two of the alleged incidents occurred before Harris filed his first EEOC charge on May 13, 2010 and therefore could not have been retaliatory. Harris alleges that he was ordered to stand in front of a Dunkin' Donuts store on April 28, 2010 without a car, an assignment typically reserved for officers of lower seniority. He also claims

4

that his May 7, 2010 paycheck was short by $1,358. Neither of these incidents is actionable discrimination or retaliation. *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996) (incidents that occurred before the plaintiff filed an EEOC charge could not form the basis of a retaliation claim because those incidents "could have been—and should have been—included in her administrative charges").

### 2. Incidents that were not materially adverse

Under either the direct or indirect method, Harris must demonstrate that he suffered a materially adverse employment action. *Povey*, 697 F.3d at 624; *Kersting*, 250 F.3d at 1117. To qualify as materially adverse, the action must be severe enough that "a reasonable employee would have found the challenged action materially adverse," which "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). *See also Hoppe v. Lewis Univ.*, 692 F.3d 833, 842 (7th Cir. 2012) (applying the same standard to an ADA retaliation claim). Examples of actions that might be severe enough to dissuade a reasonable employee from exercising his rights include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 456 (7th Cir. 2011) (addressing an Age Discrimination in Employment Act retaliation claim). No reasonable jury could conclude that many of the alleged incidents, considered individually or cumulatively, were materially adverse.

Harris contends that Commander Patterson ordered him to drive a police vehicle to a deposition in downtown Chicago on May 18, 2010 in violation of a medical report

5

that restricted Harris from driving. Harris claims this was done "to cause [him] physical harm and in retaliation for filing the charge." Pl.'s Mem. in Opp. to Mot. for Summ. J. at 5. While driving back from the deposition, Harris experienced severe pain in his leg for which he required emergency medical assistance. Harris admitted, however, that he drove his personal vehicle to the police station the morning of the deposition. Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. B at 50. Further, Harris had to get to the deposition somehow, yet he makes no effort to explain why driving was more likely to cause injury than riding as a passenger. In sum, Harris has not explained why the order in question might deter a reasonable person from making a discrimination complaint.

Harris also claims that because the police department did not file an injury report after the deposition, his insurance company and the department did not pay for his hospital visit. Harris's supervisors admit that an injury report is normally created when an officer is injured on duty. But Patterson stated during his deposition that a new injury report typically would not be filed for an existing injury like the one Harris suffered. *Id.*, Ex. C at 115. Harris's only response is that "Defendant fails to identify any support in the record for this so-called 'new injury' policy." Pl.'s Mem. in Opp. to Mot. for Summ. J. at 5. That, however, is insufficient to show a genuine factual dispute. Moreover, Harris has failed to identify any particular medical expense that actually was not reimbursed; during his deposition, he simply speculated that he "believe[d] it was never paid." Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. B at 254. This vague speculation is insufficient to show a genuine factual dispute. *See Powers v. Chandler*, 561 F. App'x 533, 533 (7th Cir. 2014).

For many of the alleged incidents, Harris does not identify any harm that he

suffered. *See Burlington*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). For instance, on May 18 and June 2, 2010, Commander Askew required Harris to submit forms explaining previous absences. Harris admits that he was not disciplined or otherwise harmed as a result of filling out those forms. Pl.'s Resp. to Def.'s. LR 56.1(a)(3) Stmt. ¶ 33. The Seventh Circuit has found that incidents of this type do not amount to actionable retaliation. *See Hoppe*, 692 F.3d at 842 (incidents that did not cause the plaintiff any harm, including the employer's requirement that the plaintiff supply a doctor's note for missed meetings, could not be classified "as anything other than mere snubs or slights"); *Threatt v. Donovan*, 380 F. App'x 544, 548 (7th Cir. 2010) (alleged incidents, which included subjecting plaintiff to lengthy disciplinary meetings, were together "too insignificant to sustain a retaliation claim").

Harris also complains that he was not immediately given new body armor when his old armor expired. But he concedes that he did not actually need body armor for the light duty position to which he was assigned at the time and that there were other employees who faced similar delays in receiving new body armor. Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. B at 89–91. Under the circumstances, this incident likewise is insufficiently adverse to support a claim of retaliation.

Harris contends that Commander Askew gave him an undesirable light duty assignment in the records room that required him to stand longer than his medical restrictions allowed. Harris admits, however, that within a day or two, Chief Eaves switched him to a different light duty position that accommodated his medical needs. Pl.'s Resp. to Def.'s. LR 56.1(a)(3) Stmt. ¶¶ 26–28. Harris does not suggest that he

7

suffered any harm as a result of his short stint in the records room. *See Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009) ("[A] transfer or reassignment of job responsibilities . . . is not materially adverse unless it represents a *significant* alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects.").

Harris also claims that he received verbal threats and a note that stated "U Dead" from his supervisors at the police department. Because Harris has no personal knowledge of who wrote the note (and cites no other admissible evidence on that point), the Court need not consider this allegation. Commander Askew's statements that "doctors don't run the police department," "I'm not scared of you," and "I ain't no punk," Pl.'s Mem. in Opp. to Mot. for Summ. J. at 7, are also insufficient to create a triable issue concerning whether Harris suffered an adverse employment action. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107–08 (7th Cir. 2012) (supervisor calling the plaintiff a "trouble maker," a "cry baby," and a "spoiled child" did not constitute materially adverse actions); *Harris v. Firstar Bank Milwaukee, N.A.*, 97 F. App'x 662, 665 (7th Cir. 2004) (unpublished) (rejecting plaintiff's retaliation claim "because the actions of which she complains—intimidating comments, dirty looks, and increased scrutiny by her supervisors—even if true, do not constitute adverse actions by her employer").

Considering these incidents together, no reasonable jury could find that Harris suffered a materially adverse employment action. At worst, Harris experienced a number of trivial harms and inconveniences. As the Supreme Court has stated, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee

from those petty slights or minor annoyances that often take place at work." *Burlington*, 548 U.S. at 68. Harris has not presented enough evidence to permit a reasonable jury to find that the indignities referenced above might deter a reasonable employee from making a complaint.[2]

### 3. Denials of leave requests and monetary benefits

Harris also cites as retaliatory a number of instances in which he says he was not paid or was deprived of vacation or sick time by the City. These incidents collectively might permit a reasonable jury to find materially adverse action. But Harris nonetheless fails to offer enough evidence to survive the City's motion for summary judgment.

Harris claims that his wages were underreported for purposes of his workers' compensation claim. But Harris has no personal knowledge, and no other admissible evidence, that his supervisors caused the alleged shortage in his workers' compensation payments. Thus he cannot show the requisite causal link. *See Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014); *Campbell v. Henderson,* No. 00 C 6837, 2002 WL 1732361, at *5 (N.D. Ill. July 26, 2002), *aff'd*, 57 F. App'x 267 (7th Cir. 2003) ("Plaintiff has no admissible evidence to support her allegation that Ellis caused her injury compensation claims to be delayed"; "[n]othing on the record indicates that Plaintiff has any personal knowledge" of her employer's actions).

Harris has, however, cited other potentially actionable instances of adverse action. He contends that he was not reimbursed for the $30-$40 that he spent on

---

[2] Although the inquiry into whether an action is materially adverse is an objective one, *Burlington*, 548 U.S. at 68, the Court notes that Harris does not appear to have been deterred by the aforementioned incidents from making further complaints. Indeed, he filed several internal complaints about issues ranging from the expired body armor to the alleged harassment by his commanders to disagreements about his leave time.

9

parking during the May deposition. He also asserts that the City's attorney, Sandra Alvarado, required him to apply his unused 2009 sick days when he took extended medical leave in July 2010. And he claims that he was not paid for his unused 2009 vacation days (Harris filed a grievance with the union about his vacation days, but he does not remember the outcome). Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. B at 269. Finally, Harris claims that Acting Chief Eaves ordered him to return to full duty on January 26, 2012 before he was medically released to perform full duty work. Harris suffered an injury within hours of his return to full duty and subsequently was notified that there were no longer any light duty positions available. Harris claims that after that, he collected lower pay through workers' compensation than he would have in a light duty position. Although Harris does not specify the amount of money or the number of leave days that have been withheld, the Court assumes for purposes of discussion that a reasonable jury could find that these claimed losses amount to materially adverse action.

Nonetheless, Harris does not present evidence from which a reasonable jury could infer retaliation. Harris cannot proceed under the indirect method of proof because he has not identified any similarly situated employee who did not engage in protected activity and was treated more favorably than he was. In his brief, Harris names officers who he claims were treated more favorably, but he provides no information about their duties, supervisors, or job performance. Without more information about those officers, there is no basis upon which a reasonable jury could find them similarly situated to Harris. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 310 (7th Cir. 2012) (noting that a plaintiff must identify "enough common features

between the individuals to allow [for] a meaningful comparison") (internal quotation marks omitted).

Additionally, no reasonable jury could find a causal connection between Harris's EEOC charge and the alleged deprivations of leave and money, as required under the direct method of proof. To show there is a triable issue regarding causation under the direct method, Harris must offer evidence that amounts to an admission or circumstantial evidence that gives rise to an inference of intentional retaliation. *Stephens*, 569 F.3d at 787. Harris does not contend that his supervisors made an admission. Thus, to survive summary judgment via the direct method of proof, he must point to a "convincing mosaic" of circumstantial evidence that would permit a reasonable jury to infer retaliation. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Harris can do this by offering evidence of suspicious timing or statements, evidence that similarly situated employees were treated differently, or evidence that Harris's supervisors' reasons for shorting him leave time and money were pretextual. *Id.*

Harris relies primarily on temporal proximity as evidence of causation. He points to certain allegedly retaliatory incidents that took place within a very short period after he filed his EEOC charge on May 13, 2010. But the Court has determined that those incidents could not be found materially adverse. And all of the incidents that the Court has assumed a reasonable jury might find materially adverse happened at least a month after the EEOC charge was filed. Although Harris paid for parking on May 18, 2010, he indicated during his deposition that he did not submit the receipt until June 17, 2010, and thus the failure to pay him took place after that. Def.'s Mem. in Supp. of Mot.

11

for Summ. J., Ex. B at 266–68. The alleged refusal to pay Harris for his 2009 vacation days took place on June 18, 2010. Harris was required to apply his unused sick days when he took medical leave in July 2010. And the alleged workers' compensation shortage occurred "[i]n or near late 2010." Pl.'s Stmt. of Additional Material Facts ¶ 27. In short, all of the potentially adverse actions occurred more than a month after Harris filed his EEOC charge.

The Seventh Circuit has stated that "when there is corroborating evidence of retaliatory motive, . . . an interval of a few weeks or even months may provide probative evidence of the required causal nexus." *Coleman*, 667 F.3d at 861. But Harris does not offer corroborating evidence of this sort. He cites Commander Askew's alleged statements that "doctors don't run the police department," "I'm not scared of you," and "I ain't no punk." Pl.'s Mem. in Opp. to Mot. for Summ. J. at 7. It is undisputed, however, that Askew made none of the alleged adverse decisions regarding leave and pay. For comments of this sort to support an inference of discriminatory intent, they typically must be "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1072 (7th Cir. 2012) (internal quotation marks omitted) (school principal's remark that the plaintiff "should look for another job on the North Side where most of the Indians go" did not create a triable issue when the comment was not contemporaneous with or causally related to the discharge). Harris alleges that his other supervisors—not Askew—denied him leave or payment. Eaves denied Harris's reimbursement requests for his vacation days and parking and decided to return Harris to full duty. Compl. ¶ 25; Pl.'s Mem. in Opp. to Mot. for Summ. J. at 8. Alvarado required Harris to apply his

unused sick days to his medical leave. Compl. ¶ 26. In short, Askew was not the decision maker, nor did his comments involve any of the alleged adverse actions. Thus Askew's comments do not support an inference of retaliation.

Harris contends that "Eaves ordered [him] to return to full duty even though Defendant was in possession of Harris's January 20, 2012 Functional Capacity Exam, which noted he was not yet cleared to return to full duty." Pl.'s Mem. in Opp. to Mot. for Summ. J. at 8. But neither this allegation nor Harris's medical records support an inference of retaliatory intent. The City of Harvey admits its "temporary oversight" in returning Harris to full duty before he was medically released. Def.'s Reply in Supp. of Mot. for Summ. J. at 8. But there is no evidence from which a reasonable jury could find that this was the result of retaliation, as opposed to oversight or mistake—in particular, misreading of a January 20, 2012 doctor's note that stated: "Regarding his lumbar spine, he can return to work full duty. His ultimate return to work will be predicated upon his right shoulder." Pl.'s Mem. in Opp. to Mot. for Summ. J., Ex. G, at 4.

In sum, Harris may have painted a picture of a police department that is disorganized and fraught with tension. He has not, however, presented evidence that would support a reasonable inference of a causal connection between his EEOC charge and actionable adverse action. The City is therefore entitled to summary judgment on his retaliation claim.

**C.     Discrimination claim**

Harris contends that the same evidence that supports his claim of retaliation also

constitutes discrimination on the basis of his disability.[3] *See* 42 U.S.C. § 12112(a). Harris's discrimination claim fails for the same reasons that his retaliation claim fails.

As with retaliation, Harris's discrimination claim requires him to show as a threshold matter that he suffered an adverse employment action. *See Majors v. Gen. Elec. Co.,* 714 F.3d 527, 533 (7th Cir. 2013). As the Court has discussed, Harris has failed to offer evidence that he suffered a materially adverse action under the "somewhat more forgiving" standard for retaliation claims for many of the alleged incidents he cites. *Barton*, 662 F.3d at 456. Thus, this evidence necessarily fails to clear the adverse action bar on his discrimination claim.

Even for those incidents that might clear the bar, Harris has not presented enough evidence from which a reasonable jury could find in his favor under either the direct or the indirect method of proof. Specifically, Harris has not identified information about any similarly situated employees who were treated better than he was, as is required under the indirect method. And as discussed earlier, he has failed to identify a triable issue as to causation under the direct method.

## Conclusion

For the foregoing reasons, the Court grants the City of Harvey's motion for summary judgment [dkt. no 39] and directs the Clerk to enter judgment in favor of the defendant. The trial date of November 3, 2014 is vacated.

_____
MATTHEW F. KENNELLY
Date: October 8, 2014                                United States District Judge

---

[3] The Court assumes that Harris qualifies as disabled under the ADA, as neither party argues otherwise.